*In re* DETENTION OF RICHARD HAUGE (The People of the State of Illinois, Petitioner-Appellee, v. Richard Hauge, Respondent-Appellant).

Third District   No. 3—03—0357

Opinion filed June 23, 2004.

James T. Reilly (argued), of M.G. Gulo & Associates, Ltd., of Streator, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and J. Paul Hoffmann (argued) and Linda Woloshin, Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Pursuant to the Illinois Sexually Violent Persons Commitment Act

(Act) (725 ILCS 207/1 *et seq.* (West 2000)), the State filed a petition alleging that the respondent, Richard Hauge, was a sexually violent person. Respondent filed a pretrial motion to preclude any evidence at hearing based upon certain actuarial instruments purporting to predict the likelihood of a sexual offender reoffending. A hearing was held under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

Following the hearing, the court denied the motion to exclude evidence, finding that the instruments in question were generally accepted in the relevant scientific community and were, therefore, admissible into evidence under the *Frye* test. Subsequently, the respondent filed a motion to reconsider, seeking the court's review in light of the recent holding by the Second District in *People v. Taylor*, 335 Ill. App. 3d 965 (2002), which held that the actuarial instruments in question did not meet the requisite standards for admissibility under *Frye*.

As part of the record before the trial court in the instant matter, the transcripts of the *Frye* hearing in *Taylor* were presented to the court herein below. The circuit court denied the motion to reconsider, but then certified the question of admissibility of the evidence for interlocutory consideration pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

The court certified the following question for our review: Should the following risk assessment tools: the Minnesota Sex Offenders Screening Tool Revised (MnSOST-R); the Rapid Risk Assessment for Sex Offender Recidivism (RRASOR); the Static-99; the Violent Risk Appraisal Guide (VRAG); the Sex Offender Risk Appraisal Guide (SORAG); the Violent Risk Assessment Guide (VRAG); and the personality test, Hare Psychopathy Check List (HPCLR), be admissible as meeting the appropriate standard for scientific testimony in Illinois?

In fact, the certified question contains two separate questions: (1) are the identified risk assessment tools admissible? And (2) do those test meet the appropriate standard for scientific testimony? For the following reasons, we answer the first question "yes." We answer the second question "no," but only because we hold that such instruments do not constitute a special scientific principle, method or test to which the *Frye* test applies. See *In re Detention of Erbe*, 344 Ill. App. 3d 350 (2003).

On appeal, the respondent contends that the actuarial instruments at issue are not generally accepted in the scientific community and do not meet the requirements for general acceptance under *Frye*.

In determining whether an expert is qualified to render an opinion based upon novel scientific evidence, Illinois courts follow the *Frye* test. Also known as the "general acceptance test," the *Frye* test

provides that scientific evidence is admissible at trial only if the methodology or scientific principle upon which the test results are based is " 'sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 77, 767 N.E.2d 314, 324 (2002), quoting *Frye*, 293 F. at 1014. The proponent of the evidence bears the burden of demonstrating that the scientific theory relied upon by the expert has gained general acceptance in the scientific field. *Donaldson*, 199 Ill. 2d at 77, 767 N.E.2d at 324. A reviewing court will review the trial court's admission of expert testimony on an abuse of discretion standard. *People v. Eyler*, 133 Ill. 2d 173, 549 N.E.2d 268 (1989).

We note that this issue has been addressed by different panels of the Illinois Appellate Court, with differing results. As previously mentioned, the Second District recently reviewed the issue in *People v. Taylor*, 335 Ill. App. 3d 965, 977 (2002).

In *Taylor*, the jury found the respondent to be a sexually violent person pursuant to the Act (725 ILCS 207/1 *et seq.* (West 2000)) after the trial court denied the respondent's motion *in limine* seeking to bar expert testimony regarding the results of actuarial instruments used by the expert to predict the likelihood that the respondent would reoffend. On appeal, the court held that psychological or psychiatric testimony of an expert predicated upon actuarial instruments is subject to the requirements of *Frye*.

A panel of this district in *In re Detention of Hargett*, 338 Ill. App. 3d 669 (2003), agreed with the general proposition in *Taylor* that actuarial instruments, such as those at issue in the instant matter, are subject to the *Frye* test for general acceptance.

In contrast, the Fourth District, in *In re Detention of Erbe*, held that actuarial instruments, such as those at issue herein, are not scientific evidence subject to *Frye*, that the actuarial instruments are not novel, and that the use of these instruments is generally accepted in the relevant field. *Erbe*, 344 Ill. App. 3d at 370. As noted by the *Erbe* court, these actuarial instruments merely augment the expert opinion. "The actuarial instruments merely help the professional draw inferences from historical data or the collective experience of other professionals who have assessed sex offenders for risks of reoffending." *Erbe*, 344 Ill. App. 3d at 364-65. As such, the *Erbe* court further noted, "[i]n this regard, the instruments are akin to actuarial tables for life expectancy admitted as evidence to a jury for the determination of the gross amount awarded for future pain and suffering or used by an economic expert to determine the present cash value of a pension. Such instruments simply do not constitute a special scientific principle, method, or test to which *Frye* applies." *Erbe*, 344 Ill. App. 3d at 365.

After reviewing the competing analyses of *Taylor* and *Erbe*, we find the analysis utilized by the *Erbe* court to be more convincing. We also note that other jurisdictions have similarly held that an expert's use of these actuarial instruments in reaching an opinion as to likelihood of reoffending does not implicate *Frye*. See *Barefoot v. Estelle*, 463 U.S. 880, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983); *People v. Ward*, 71 Cal. App. 4th 368, 373, 83 Cal. Rptr. 2d 828 (1999); *Westerheide v. State*, 767 So. 2d 637, 657 (Fla. 2000); *State ex rel. Romley v. Fields*, 201 Ariz. 321, 328, 35 P.3d 82, 89 (App. 2001); *In re Linehan*, 557 N.W.2d 171, 189 (Minn. 1996); *In re Detention of Holtz*, 653 N.W.2d 613, 619 (Iowa App. 2002); *In re Commitment of R.S.*, 339 N.J. Super. 507, 773 A.2d 72, 96 (App. Div. 2001).

We are convinced, after reviewing these cases, that it is the opinion of the expert, not his or her methodology, that is being offered as evidence to the jury. Thus, the methodology is useful to the trier of fact, and is likewise subject to attack, but only as support for the expert's opinion. In the final analysis, cross-examination and rebuttal witnesses are the proper method to attack the expert's reliance upon the instruments in question in the formation of his or her opinion. *Erbe*, 344 Ill. App. 3d at 372.

For the foregoing reasons, we answer the certified question as previously described. The actuarial instruments at issue are admissible but are not subject to the requirements of *Frye*.

Certified question answered; cause remanded.

SCHMIDT and BARRY, JJ., concur.