*In re* DETENTION OF GERALD SVEDA (The People of the State of Illinois, Petitioner-Appellee, v. Gerald Sveda, Respondent-Appellant).

First District (5th Division)    No. 1—02—3583

Opinion filed November 24, 2004.

Arnstein & Lehr, L.L.P., of Chicago (Arthur L. Klein, Hal R. Morris, and Martha K. Milia, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Linda D. Woloshin and Domenica A. Osterberger, Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

In 1994, respondent Gerald Sveda was convicted of aggravated criminal sexual assault and child pornography and was sentenced to 30 and 15 years in prison, respectively, to be served consecutively. On appeal, this court vacated the conviction for aggravated criminal sexual assault, entered a conviction for criminal sexual assault, and reduced the sentences to 10 years on that charge and 5 years on the child pornography conviction. In 1995, respondent was again convicted of aggravated criminal sexual assault and child pornography and was sentenced to 7 years on each count, to be served concurrently. In 1999, respondent completed his term of incarceration. Prior to his release, the State initiated civil commitment proceedings. Respondent appeals an order of the circuit court of Cook County committing him to the Department of Human Services (DHS) until he is found to no longer be a sexually violent person.

The record on appeal discloses the following facts. Alison Perona, a felony trial supervisor and two-time supervisor of the office of child advocacy and protection unit of the Cook County State's Attorney's office, testified regarding her prosecution of respondent leading to the 1994 convictions.

Dr. Agnes Jonas, a psychologist employed by the Department of Corrections, testified regarding her probable cause evaluation of respondent. Dr. Jonas told respondent that he did not have to speak to her. Dr. Jonas did not tell respondent that he had a right to consult an

attorney. Dr. Jonas told respondent that she would use the information in her evaluation as well as a report, if she concluded that he possibly meets the criteria for civil commitment. She told respondent that the Attorney General would decide whether to pursue civil commitment proceedings and that she could use information from the interview in court.

In July 1999, Dr. Jonas prepared a report of her evaluation, which was admitted into evidence. This report was based on her interview of respondent, the official statement of facts in this court's orders, and other materials. Dr. Jonas reported that respondent has mental disorders on Axis I called sexual sadism and bipolar disorder Type I by history. Dr. Jonas also concluded that, on Axis II, respondent had a personality disorder otherwise unspecified, with narcissistic and antisocial features. Dr. Jonas opined in the report that it was substantially probable that respondent would commit another act of sexual violence in the future.

Dr. Jonas testified that she later reviewed evidence gathered from respondent's house, which reinforced her opinion. In particular, photographs recovered supported her diagnosis of sexual sadism. Dr. Jonas further considered statements respondent made to his probation officer. Dr. Jonas opined that sexual sadism, in combination with the narcissistic and antisocial personality disorders, seriously impairs his ability to control his sexual behaviors involving nonconsenting boys or preadolescents.

Dr. Jonas further testified that she performed a risk analysis based on research by Drs. Hanson and Bussiere, identifying 22 risk factors shown to be significantly related to recidivism. Dr. Jonas testified that respondent displayed seven of these factors. Dr. Jonas also identified dynamic factors from research by Drs. Hanson and Harris that relate to sex offender recidivism. Dr. Jonas then opined that based on respondent's disorders and the risk factors she described, it was substantially probable that respondent would commit another act of sexual violence in the future.

On re-cross-examination, counsel asked Dr. Jonas about the Hanson and Bussiere research. Counsel asked for a copy of the research report. The trial court initially stated that it did not see the relevance or importance of its production. After a further colloquy, the trial court denied counsel's request for production of the document, on the ground that counsel had "plenty of time" prior to the hearing to request its production.

Dr. Paul Heaton, a psychologist who contracts with the DHS, testified regarding his evaluation of the respondent. Dr. Heaton told respondent that anything respondent said would be included in his

report and any commitment proceeding. Dr. Heaton interviewed respondent twice and reviewed respondent's correctional file and the circumstances of respondent's offenses. Dr. Heaton also administered several tests, including the General Ability Measure for Adults (GAMA), the Minnesota Multiphasic Personality Inventory II (MMPI II), and the Million Clinical Multiaxial Inventory III (MCMI III). Further, like Dr. Jonas, Dr. Heaton relied on an actuarial method for assessing recidivism drawn from a meta-analysis of sex offender risk prediction literature performed by Hanson and Bussiere.

Dr. Heaton found that respondent suffered from: paraphilia, sexually attracted to nonconsenting with sadistic features; bipolar disorder in remission; and personality disorder with sadistic and antisocial features. Dr. Heaton did not find that respondent suffered from sexual sadism "in total." Dr. Heaton opined that it was substantially probable that respondent would commit another act of sexual violence in the future.

Respondent presented no evidence. Following argument, the trial court found that respondent was a sexually violent person subject to commitment to the DHS until found otherwise. Respondent now appeals.

I

■ Respondent contends that the trial court erred in admitting the State's expert testimony without holding a hearing on the admissibility of the statistical and actuarial tests upon which Drs. Jonas and Heaton relied, such as the meta-analysis of risk factors by Drs. Hanson and Bussiere. Illinois courts follow the *Frye* test in determining the admissibility of expert testimony based on novel scientific evidence. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 76-77, 767 N.E.2d 314, 323 (2002). The "general acceptance" test articulated in *Frye* provides that scientific evidence is admissible only if the methodology or scientific principle upon which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs. *Frye*, 293 F. at 1014; *Donaldson*, 199 Ill. 2d at 77, 767 N.E.2d at 324. However, general acceptance does not require that the methodology be accepted by unanimity, consensus, or even a majority of experts. *Donaldson*, 199 Ill. 2d at 78, 767 N.E.2d at 324.

The State initially responds that the issue is waived. The Second District of this court has held that a respondent may waive this type of objection by failure to raise or preserve it properly for review in the trial court. *In re Commitment of Bushong*, 351 Ill. App. 3d 807, 815 N.E.2d 103 (2004); *In re Detention of Swope*, 343 Ill. App. 3d 152, 158,

797 N.E.2d 211, 216 (2003), *appeal allowed*, 207 Ill. 2d 603, 807 N.E.2d 975 (2004); *In re Detention of Traynoff*, 338 Ill. App. 3d 949, 961, 789 N.E.2d 865, 875 (2003). In this case, respondent filed a motion *in limine* to exclude expert testimony, but that motion did not raise a *Frye* objection to the statistical and actuarial tests to which respondent now objects; moreover, after the motion was denied respondent would have been obligated to raise the *Frye* objection anew at the hearing. See, *e.g.*, *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 792, 776 N.E.2d 262, 291 (2002). Respondent claims that he did object at the hearing, but a review of the record citations provided by respondent shows that the objections were that the opinions were subject to cross-examination and that Dr. Jonas did not bring a copy of the meta-analysis to court. Consequently, respondent waived this objection.

Furthermore, respondent does not argue that the admission of the evidence constitutes plain error. *Swope*, noting that this court has not held that such actuarial instruments are, as a matter of law, incompetent evidence, held that their introduction was *not* plain error. *Swope*, 343 Ill. App. 3d at 158, 797 N.E.2d at 217. However, in *Traynoff*, this court applied the plain error rule to such a case. *Traynoff*, 338 Ill. App. 3d at 963, 789 N.E.2d at 877. Plain error is a limited and narrow exception to the general waiver rule and is invoked only where the evidence is closely balanced or where the alleged error is so substantial that it deprived the defendant of a fair trial. *Traynoff*, 338 Ill. App. 3d at 963, 789 N.E.2d at 877. In this situation, the defendant bears the burden of persuasion with respect to prejudice. *Traynoff*, 338 Ill. App. 3d at 963, 789 N.E.2d at 877.

First, it is inherent in the plain error rule that the challenged ruling must be in error. The Second District of this court has held that tests and actuarial instruments such as the ones at issue in this case are scientific evidence that are admissible only if they pass the *Frye* test. *In re Commitment of Lourash*, 347 Ill. App. 3d 680, 687, 807 N.E.2d 1269, 1275 (2004) (Hanson-Bussiere meta-analysis and Minnesota Sex Offender Screening Tool—Revised (MnSOST-R)); *Traynoff*, 338 Ill. App. 3d at 964, 789 N.E.2d at 878 (Rapid Risk Assessment of Sexual Offense Recidivism (RRASOR), Static-99, and MnSOST-R); *People v. Taylor*, 335 Ill. App. 3d 965, 977, 782 N.E.2d 920 (2002) (RRASOR and Static-99). One panel of the Third District and one panel of the Fourth District have also taken this view. *In re Detention of Hargett*, 338 Ill. App. 3d 669, 675, 786 N.E.2d 557, 652 (2003) (Third District); *In re Bolton*, 343 Ill. App. 3d 1223, 1229-31, 800 N.E.2d 128, 132-33 (2003) (Fourth District). However, other panels of the Third and Fourth Districts have disagreed. See *In re Detention of Hauge*, 349

Ill. App. 3d 283, 284, 812 N.E.2d 571, 572 (2004) (Third District); *In re Commitment of Stevens*, 345 Ill. App. 3d 1050, 1059, 803 N.E.2d 1036, 1044 (2004) (Fourth District); *In re Detention of Erbe*, 344 Ill. App. 3d 350, 800 N.E.2d 137 (2003) (Fourth District). Our supreme court may resolve the split in authority. See *In re Detention of Simons*, No. 5—02—0579 (2003) (unpublished order under Supreme Court Rule 23), *appeal allowed*, 206 Ill. 2d 622, 806 N.E.2d 1066 (2003). Thus, it is not clear that the trial court erred in not conducting a *Frye* hearing.

Moreover, in this case, the evidence that respondent is a sexually violent person was not closely balanced. To the contrary, the evidence seems overwhelming that respondent is a sexually violent person, even if the disputed evidence is excluded. The experts diagnosed respondent with mental disorders that are chronic in nature, noted the evidence that respondent had engaged in sexual offenses against nonconsenting young males for decades before the arrest that led to his convictions, noted that respondent had declined treatment for these disorders in prison and had been disciplined in prison for possession of contraband pornographic material (showing disregard for the rules even in a highly structured environment).

Nor has the respondent shown that the error was such that it denied him a fair trial. The reports and testimony of Drs. Jonas and Heaton both opined that it was substantially probable that respondent would commit another act of sexual violence in the future *before* discussing the meta-analysis of Hanson and Bussiere. Pages 11-12 of the report of Dr. Jonas stated that this opinion was based on respondent's mental disorders of sexual sadism and personality disorder otherwise unspecified, with narcissistic and antisocial features. The Jonas report expressly stated that these disorders predisposed respondent to committing another sexually violent offense. The Jonas report *then* states that, "[i]n addition to the mental disorders described above, there are a number of factors that are associated with a high risk of recidivism," leading into a discussion of the factors identified by Hanson-Bussiere and Hanson-Harris. The report submitted by Dr. Heaton refers to several tests, including the GAMA, the MMPI II and the MCMI III, but respondent has not objected to these tests and has not claimed that they are statistical or actuarial tests. Dr. Heaton opined that respondent is predisposed to committing another sexually violent offense in a summary on page 13 of his report; the discussion of the actuarial evidence begins on page 14 of his report.

In *Taylor*, one of the cases cited by respondent, this court recognized a difference between instances when an evaluator has relied solely upon clinical judgment to predict future dangerousness

and when an evaluator has utilized actuarial instruments to assist in making this determination. *Taylor*, 335 Ill. App. 3d at 975. In *Lourash*, this court concluded that any error in admitting such evidence was harmless because, even if the respondent had prevailed at a *Frye* hearing, the result of the proceedings would have been the same because the instruments were not "crucial" to the expert's conclusion, and the evidence based on undisputed scientific methodologies amply supported the conclusion. *Lourash*, 347 Ill. App. 3d at 687, 807 N.E.2d at 1275-76. See also *In re Commitment of Field*, 349 Ill. App. 3d 830, 836-839, 813 N.E.2d 319, 325-27 (2004) (same). In this case, the experts used both clinical judgment and actuarial instruments, but their reports make clear that their clinical judgments stand independent of the actuarial evidence. Similar to *Lourash*, the experts had not only evidence of the respondent's extensive history of sexually violent acts, but also the respondent's refusal to seek treatment, his evasive answers during interviews and his breaking of prison rules regarding possession of pornography.

In sum, respondent cannot show that his case falls within the scope of the plain error rule.

## II

■ Respondent next contends that his right to due process of law under the fourteenth amendment of the United States Constitution was violated because the expert opinions were based on coercive interviews. The cases cited in respondent's initial brief are criminal cases, not a noncriminal proceeding such as this one. The United States Supreme Court has never held that the due process clause of the fourteenth amendment of its own force requires application of the privilege against self-incrimination in a noncriminal proceeding, where the privilege claimant is protected against his compelled answers in any subsequent criminal case. *Allen v. Illinois*, 478 U.S. 364, 374, 92 L. Ed. 2d 296, 308, 106 S. Ct. 2988, 2995 (1986).

In his reply brief, respondent cites *Chavez v. Martinez*, 538 U.S. 760, 779, 155 L. Ed. 2d 984, 1001, 123 S. Ct. 1994, 2007 (2003) (Souter, J., concurring, joined by Breyer, J.), for the proposition that the fourteenth amendment protects individuals against state actors who coerce an inculpatory statement. First, it must be noted that the page cited is to an opinion by Justice Souter which is not an opinion of the Court, but merely concurring in the judgment. Second, both that opinion and the opinion of the Court cite to *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 140 L. Ed. 2d 1043, 1059, 118 S. Ct. 1708, 1718 (1998), as the example of a civil remedy being available under federal civil rights law for abusive state (police) behavior. *Chavez*, 538

U.S. at 774, 155 L. Ed. 2d at 998, 123 S. Ct. at 2005; *Chavez*, 538 U.S. at 779, 155 L. Ed. 2d at 1001, 123 S. Ct. at 2007 (Souter, J., concurring, joined by Breyer, J.). These are reflections of the rule established in the seminal case of *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952), in which the Court held that the forced pumping of a suspect's stomach offended due process as conduct "that shocks the conscience" and violates the "decencies of civilized conduct." There is nothing in *Rochin, Lewis*, or *Chavez* that suggests that merely interviewing a prisoner for the purpose of determining whether the State should petition to have the prisoner committed to DHS for treatment as a sexually violent person—with no use of physical force whatsoever—should be considered to "shock the conscience" of the court.

## III

■ Finally, respondent claims that the trial court's order was "against the manifest weight of the evidence." On review, we ask only whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt. *In re Detention of Tittlebach*, 324 Ill. App. 3d 6, 11, 754 N.E.2d 484, 488 (2001). Respondent's argument is premised on the trial judge's statement (in finding that the State had met its burden) that "he was impressed with [the experts'] use of words, some of which I do no understand." However, even assuming *argeundo* that respondent is correct in assuming that the word "no" should be read as "not," respondent takes the statement out of context. The trial judge went on to say that the experts "attempted to explain common sense as to how our brain functions in a common sense way." Respondent can point to nothing in the transcript where the trial judge states that he is relying just on the past offense. Moreover, the question on appeal is whether *any* rational trier of fact could have found respondent to be sexually violent. In this case, the evidence seems overwhelming. The experts' clinical judgment, even before using actuarial evidence, was that respondent suffered from disorders that made it substantially probable he would reoffend. Respondent's decades-long history of sexual misconduct was not the only basis for those opinions, but was considered to be a corroborating factor by the experts. A rational trier of fact could easily have concluded as the trial court did in this case.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'BRIEN and NEVILLE, JJ., concur.