# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**In re Commitment of Hardin, 2013 IL App (2d) 120977**

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF TOMMY O. HARDIN (The People of the State of Illinois, Petitioner-Appellee, v. Tommy O. Hardin, Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-0977 |
| Filed | September 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from respondent's commitment pursuant to the Sexually Violent Persons Commitment Act, the appellate court held that the admission of the testimony of his parole agent that there was a strong probability that respondent would engage in sexual violence in the future did not result in error, the evidence showing that respondent was unable to control his impulses and follow rules and that it was substantially probable that he would reoffend was sufficient to establish beyond a reasonable doubt that he was sexually dangerous, and the trial court's refusal to allow respondent to make a statement at the dispositional hearing was not an abuse of discretion, especially in view of the differences between a dispositional hearing and a sentencing hearing. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 07-MR-1685; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | William G. Worobec, of Law Office of William G. Worobec, P.C., of Wheaton, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of counsel), for the People. |
| | |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices McLaren and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, respondent, Tommy O. Hardin, was found to be a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2010)), and he was committed to the custody of the Department of Human Services. Respondent appeals, arguing that (1) it was improper to admit testimony from his parole officer; (2) the State failed to prove beyond a reasonable doubt that he is a sexually violent person; and (3) the trial court's denial of his request to make a statement in allocution before the court committed him was an abuse of discretion. For the reasons that follow, we affirm.

¶ 2    On November 19, 2007, the State petitioned the court to have respondent declared a sexually violent person. Following a probable cause hearing, the trial court dismissed the petition, the State appealed, and this court reversed and remanded the cause for further proceedings. See *In re Detention of Hardin*, 391 Ill. App. 3d 211, 216, 221 (2009). Our supreme court granted respondent leave to appeal and affirmed this court's judgment. See *In re Detention of Hardin*, 238 Ill. 2d 33, 54 (2010).

¶ 3    On remand, the cause proceeded with a trial on the issue of whether respondent is a sexually violent person. At that hearing, Agent A.J. West testified that he is a parole officer with the Texas Department of Criminal Justice and that he is assigned to supervise sex offenders. In this capacity, West began supervising respondent on March 25, 2008, as respondent was allowed to serve his term of mandatory supervised release (MSR) in Texas. According to the terms of respondent's MSR, which were detailed in documents that respondent signed, respondent could "[n]ot possess *** any photographs *** that depict sexually explicit images," he could "[n]ot own, maintain, or operate computer equipment," and he was to have "[n]o contact with any person 17 years of age or younger in person or by other means."

¶ 4    Three months later, West received information that respondent was using a social networking website to communicate with young women or teenagers. West immediately

went to respondent's residence and asked to see respondent's computer, which respondent was allowed to use solely for the purposes of taking computer classes. On the computer, West found that respondent was apparently chatting with his daughter.[1] West also found approximately 25 pictures of young women and teenagers who were posed in sexually suggestive positions. Although none of the women or girls were completely naked, they were dressed in bikinis or skimpy undergarments, one was topless and covering her chest with her arms, and, in many of the pictures, the women or girls were reclining with their legs spread open for the camera or they were exposing their bare buttocks. Because of these violations of the terms of respondent's MSR, respondent was sent back to Illinois. Respondent never objected to West's testimony.

¶ 5    In addition to West's testimony, the State also presented the testimony of Dr. David Suire and Dr. John Arroyo, who are both certified experts in psychology. After examining various records and actuarial tools, both doctors determined that respondent suffered from two mental disorders, *i.e.*, paraphilia not otherwise specified with a preference for nonconsenting teenage girls and a personality disorder not otherwise specified, and that these disorders created a high risk that respondent would commit sexually violent acts in the future.

¶ 6    Dr. Suire, who is a psychologist with the Department of Human Services, reviewed over 17 different documents in reaching the conclusion that respondent is a sexually violent person. Although Dr. Suire wished to interview respondent before preparing the report, respondent refused. Included in the materials that Dr. Suire did review were records from the Department of Corrections, respondent's criminal history, police reports, treatment records for respondent from the Department of Human Services, and information about respondent's MSR violation in Texas.

¶ 7    With regard to the facts underlying respondent's previous convictions of various sex offenses, Dr. Suire learned that respondent's victims were between 12 and 15 years old.[2] In order to assault his victims, respondent would use manipulation, threats, and alcohol. For example, respondent told one of his victims, who was a runaway, that he was a millionaire and that he could provide for her. This victim went with respondent, and, once she refused

---

[1]Although no evidence was presented at trial concerning the age of respondent's daughter, a report prepared by Dr. Leslie Kane, who was the expert respondent retained for the dispositional hearing, indicates that respondent has two daughters, one who would have been 19 in 2008 and one who would have been 17.

[2]Specific details concerning the various sex offenses of which respondent was convicted are well known to the parties and are put forth in both this court's and our supreme court's prior opinions. As a result, we recite here only those facts pertinent to the issues raised, noting that respondent has indicated that he does not take issue with whether he was convicted of a qualifying offense. See 725 ILCS 207/15(b)(1)(A), (b)(4), (b)(5) (West 2010) (providing that, in order for respondent to be found sexually violent, the State has to establish that respondent (1) has been convicted of a sexually violent offense, (2) has a mental disorder, and (3) is dangerous to others in that his mental disorder creates a substantial probability that he will engage in future acts of sexual violence).

respondent's advances, respondent told the victim that his father was in the Mafia and that respondent could have the victim killed if she did not consent to having sex with him. On another occasion when respondent's victims, who were truant from school, refused to engage in sexual acts with him, respondent got the victims drunk and took them to a cornfield before forcing himself on them. When one of the victims refused to engage in various sexual acts with respondent, respondent told the victim that he had a black belt in karate and that he would kill her if she did not comply. Respondent committed these offenses, which happened on two different occasions, when he was on MSR for convictions of sex offenses. Dr. Suire found this, along with the fact that respondent violated the terms of his MSR in Texas, important, because it showed that respondent has been unable to successfully complete supervision in the community and is unwilling to avoid high-risk situations and abide by rules imposed upon him.

¶ 8        The testimony of Dr. Arroyo, who is a forensic as well as a clinical psychologist, was consistent with Dr. Suire's. Dr. Arroyo found, based on over 30 documents, including respondent's treatment records and criminal history, that respondent presented a substantial and continuing risk for sex offense recidivism. This conclusion was based on, among many other things, respondent's unwillingness to comply with the terms of MSR and complete sex offender treatment.

¶ 9        The trial court found respondent to be a sexually violent person. In doing so, the court stated:

"When this case was first in front of me, it was on the probable cause hearing. The State presented a very poor witness. The respondent in turn had a superb attorney who made mincemeat of the [S]tate's witness's testimony, and I made a finding based on that testimony [that] there was no probable cause.

Today, we are here in a different setting. In contrast, the State has presented two witnesses, whom I find to be credible and whose testimony was not shaken, despite the superb cross-examination by [respondent's attorney]. I find both Dr. Suire and Dr. Arroyo's testimony to be credible. The State has presented certified copies of the convictions. There is no doubt that [respondent] has been convicted of not one but several instances of a sexually violent crime, so that element of this case has been more than satisfied.

*** I *** find the doctors' testimony with regard to diagnosis of [respondent] has been proved by the standard beyond a reasonable doubt. I will find that [respondent] suffers from two mental disorders, namely, paraphilia not otherwise specified with a preference for young teenage girls, and a personality disorder not otherwise specified. So that element of the proceeding has also been proved beyond a reasonable doubt.

I believe that the most telling testimony in this matter has been that of Agent West who testified as to [respondent's] failure to comply with the requirements of his parole in the state of Texas. ***

I think that, as well as the testimony of the State's two witnesses, establishes beyond a reasonable doubt that [respondent] because of his mental disorder and his lack of treatment is substantially likely to reoffend unless he is committed to the Department of

Human Services for appropriate treatment in the treatment and detention facility."

¶ 10 Soon thereafter, respondent moved the trial court to reconsider, arguing that the court should not have placed so much weight on West's testimony, because the violations of respondent's MSR were not also violations of the law. The trial court denied the motion. In doing so, the court observed:

"[T]he Court had the benefit of not only [West's] testimony but the doctors['] as well. I am well aware that there are many requirements of [MSR]. The violation of which does not constitute the violation of law.

However, it was a violation of [MSR], and I think that that violation of the [MSR] is one indicator of [respondent's] inability to control his impulses. But that, as I said was just a minor or one part of the evidence that was presented. I think the totality of the evidence established the likelihood of re-offending."

¶ 11 The cause proceeded with a dispositional hearing. At the close of all the evidence, respondent, who chose not to testify, asked to make a statement in allocution. The court refused to allow respondent to make a statement, noting that nothing in the Act permitted respondent to do so. After he was committed, respondent moved the court to reconsider, claiming, among other things, that the court erred when it denied him the opportunity to make a statement in allocution. The court denied the motion, and this timely appeal followed.

¶ 12 Respondent raises three issues on appeal. Specifically, he argues that (1) West's testimony should not have been admitted at the trial; (2) he was not proved to be a sexually violent person beyond a reasonable doubt; and (3) he was improperly denied the right to make a statement in allocution at the dispositional hearing. We consider each argument in turn.

¶ 13 The first issue we consider is whether the admission of West's testimony was improper. In addressing this issue, we observe that respondent failed to object to the admission of West's testimony at trial. Thus, as respondent acknowledges, he has forfeited review of his claim. See *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 604 (2007) (failure to properly preserve issue at trial results in forfeiture of that issue on appeal). Nevertheless, respondent argues on appeal that his forfeiture should be excused, because the admission of West's testimony constituted plain error. See *In re Detention of Sveda*, 354 Ill. App. 3d 373, 377-78 (2004) (issues that are not preserved in the trial court may be considered on appeal if the respondent establishes plain error). In response to respondent's plain-error argument, the State claims that neither the civil nor the criminal plain-error doctrine can be invoked, because admitting West's testimony was not error at all. See *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 57 (before addressing whether the plain-error rule applies, court must consider whether error occurred at all). We agree with the State.

¶ 14 Analyzing whether the admission of West's testimony was error at all begins with examining section 35(b) of the Act (725 ILCS 207/35(b) (West 2010)). That section provides:

"At the trial on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were imposed. The petitioner may present expert testimony from both the Illinois

-5-

Department of Corrections evaluator and the Department of Human Services psychologist." *Id.*

¶ 15 In construing this section of the Act, we are guided by the well-settled rules of statutory construction. Specifically, the primary objective in construing a statute is to ascertain and give effect to the legislature's intent. *Fields*, 2012 IL App (1st) 112191, ¶ 68. The legislature's intent is best determined by examining the language used in the statute and giving the words their plain and ordinary meaning. *Id.* In construing the statute in this way, we may not read into the statute exceptions, limitations, or conditions for which the legislature did not provide. See *id.* The construction of a statute presents a question of law that we review *de novo*. *Id.*

¶ 16 The plain and ordinary language of section 35(b) of the Act provides that, at a trial on the State's petition to have a respondent declared a sexually violent person, the State *may* present expert testimony from both an evaluator with the Department of Corrections and a psychologist with the Department of Human Services. Nothing in this section limits the State to that evidence. If the State were so limited, section 35(b) would use language indicating that such evidence is the *only* evidence that can be used to support the State's allegation that the respondent is a sexually violent person. Reading section 35(b) in this way would mandate that we read into the statute limitations for which the legislature did not provide. As indicated, this is something that we may not do.

¶ 17 Supporting our position that West's testimony was properly admitted is *In re Detention of Isbell*, 333 Ill. App. 3d 906 (2002). There, the victim of one of the respondent's prior offenses was called as a witness. *Id.* at 908-09. The respondent objected to her testimony and offered instead to stipulate that he had pleaded guilty to sexually assaulting her. *Id.* at 909. The trial court overruled the objection, and the victim testified about the details of the assault. *Id.*

¶ 18 On appeal, the respondent argued that admitting the witness's testimony was improper. *Id.* at 915. The reviewing court disagreed, noting that "the testimony of the details of the sexually violent offense that led to the prerequisite conviction under the Act is admissible 'if relevant to the remaining issues of whether the person has a mental disorder and is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence.'" *Id.* (quoting *People v. Winterhalter*, 313 Ill. App. 3d 972, 979 (2000)). The court emphasized that "[u]nder the Act, the only relevant consideration is whether a respondent presently suffers from a mental disorder creating a substantial probability that he will engage in acts of sexual violence in the future." *Id.* at 916. Thus, as long as the victim's testimony was relevant to establish these elements, the court concluded, it was not error to admit her testimony concerning the details of the sexual assault. See *id.*

¶ 19 Here, in line with *Isbell*, West's testimony was relevant to the issue of whether respondent is dangerous to others in that there is a strong probability that he will engage in acts of sexual violence in the future. The court found that respondent presented such a danger after noting, among other things, that respondent, in violation of his MSR in Texas, possessed several sexually suggestive pictures of young women and teenagers, and was

actively chatting with a teenager online, on a computer he had solely for the permitted use of taking computer classes.

¶ 20　　Given the substance of West's testimony and the language of section 35(b), we conclude that West's testimony was admissible and that no error occurred. Thus, we need not consider whether the civil or the criminal plain-error rule applies to sexually-violent-person proceedings. See *Fields*, 2012 IL App (1st) 112191, ¶ 57 (noting that decision concerning whether civil or criminal plain-error rule applies is unnecessary when no error arose at all).

¶ 21　　The next issue we consider is whether respondent was proved guilty beyond a reasonable doubt of being a sexually violent person. In making this argument, respondent does not dispute that he has been convicted of a qualifying offense and that he suffers from a mental disorder. See 725 ILCS 207/15(b)(1)(A), (b)(4) (West 2010). Rather, respondent argues only that the State failed to establish the third element. That is, that he is dangerous to others because his mental disorder creates a substantial probability that he will engage in future acts of sexual violence. See 725 ILCS 207/15(b)(5) (West 2010).

¶ 22　　When a respondent is found to be sexually violent and appeals that finding, we consider "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt." *Sveda*, 354 Ill. App. 3d at 380. In determining whether the State has proved its case beyond a reasonable doubt, we must defer to the fact finder's assessment of the witnesses' credibility, resolution of conflicts in the evidence, and reasonable inferences from the evidence. *In re Detention of Welsh*, 393 Ill. App. 3d 431, 455 (2009). As noted, here respondent takes issue only with the trial court's finding that respondent is a danger to others because there is a substantial probability that he will engage in future acts of sexual violence. In this context, "substantial probability" means " 'much more likely than not.' " *In re Detention of Hayes*, 321 Ill. App. 3d 178, 189 (2001) (quoting *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1085-86 (2000)).

¶ 23　　Here, both Dr. Suire and Dr. Arroyo testified that it was substantially probable that respondent would engage in future acts of sexual violence. The doctors based this opinion on many things, some of which had nothing to do with West's testimony about the violations of respondent's MSR. The court found both doctors credible, and, on appeal, respondent does not take issue with "[t]he court's assessment of the credibility of Doctors Suire and Arroyo." Accordingly, a rational trier of fact could find, based on the doctors' testimony, that respondent presented a danger to the community in that it was substantially probable that he would commit sexually violent acts in the future.

¶ 24　　Respondent, citing the fact that the court found West's testimony "most telling," argues that the court placed undue reliance on that evidence. We disagree. First, as noted, West's testimony was relevant to the issue of whether respondent was likely to reoffend. The doctors, who considered the violations of respondent's MSR in Texas, indicated that those violations, as well as the fact that he committed new crimes in Illinois when he was on MSR here, supported their conclusion that respondent was unable to control his impulses and would likely commit sexually violent acts in the future. Second, although it is true that the court initially considered West's testimony "most telling," the court clarified at the hearing on respondent's motion to reconsider that, though insightful, West's testimony was but "one

indicator of [respondent's] inability to control his impulses" and "just a minor or one part of the evidence that was presented." This greatly deflates respondent's claim that the finding that he is a sexually violent person rested unduly on West's testimony.

¶ 25    Additionally, respondent argues at length that the State failed to prove beyond a reasonable doubt that the pictures West seized were sexually suggestive and were of underage girls and that he was conversing with a minor via his computer. Resolving such issues is not directly relevant to whether respondent is a sexually violent person. See 725 ILCS 207/5(f) (West 2010) (defining the term " '[s]exually violent person' "). The terms of respondent's MSR prohibited him from possessing any type of sexually explicit pictures and using a computer for social networking of any kind. These violations are relevant because they show that respondent is unable to control his impulses and follow rules, and, as the trial court found, they suggest that respondent is a danger to the community because it is substantially probable that he will reoffend.

¶ 26    Last respondent asserts that the trial court abused its discretion in denying him an opportunity to make a statement in allocution at the dispositional hearing. As the parties indicate, nothing in the Act allows a respondent to make a statement in allocution at the dispositional hearing. Nevertheless, likening the dispositional hearing to a criminal sentencing hearing, where the legislature has provided that a defendant may make a statement in allocution (730 ILCS 5/5-4-1(a)(6) (West 2010)), respondent claims that he should have been afforded that option before the court decided whether to commit him to a secure facility or place him on conditional release. See 725 ILCS 207/40(b)(2) (West 2010) ("An order for commitment under this Section shall specify either institutional care in a secure facility, as provided under Section 50 of this Act, or conditional release."). We disagree.

¶ 27    As the State indicates, the dispositional hearing, which is a civil proceeding (see 725 ILCS 207/20 (West 2010); see also *Hardin*, 238 Ill. 2d at 41), is drastically different from a criminal sentencing hearing. At criminal sentencing hearings, courts are concerned with imposing punishment in light of mitigating and aggravating factors. See *People v. Latona*, 184 Ill. 2d 260, 272 (1998) (noting that, at a criminal sentencing hearing, "[i]t is the province of the trial court to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case"). In contrast, "the Act is aimed at care and treatment, rather than punishment and deterrence." *In re Detention of Hunter*, 2013 IL App (4th) 120299, ¶ 29. Given these differences and the fact that the Act does not provide that a respondent may make a statement in allocution at the dispositional hearing, we conclude that the trial court did not abuse its discretion when it denied respondent the opportunity to make a statement.

¶ 28    Citing *People v. Fisher*, No. C065889, 2011 WL 3038687 (Cal. Ct. App. July 25, 2011), respondent claims that he should have been afforded the option of making a statement in allocution. In *Fisher*, the defendant argued that, like a defendant facing imposition of a sentence in a criminal case, he should have been allowed to make a statement in allocution before the court decided whether he was a sexually violent predator. *Id.* at *2. The appellate court disagreed, noting, among other things, that criminal sentencing hearings (where the issue is punishment) are different from sexually-violent-predator proceedings, and that, given

the evidence presented, nothing the defendant would have said in allocution would have altered the court's finding that he was a sexually violent predator. *Id.* The court then noted that, "[u]nlike a criminal sentencing hearing, where a trial court may have a number of discretionary choices to make, in this [sexually-violent-predator] proceeding, the only authorized act that could follow [a sexually-violent-predator] finding was an indeterminate commitment." *Id.*

¶ 29 Respondent claims that *Fisher* is helpful because, given that a court in Illinois at the conclusion of a dispositional hearing can choose commitment to a secure facility or conditional release, which choice is unavailable in California, respondent here should have been allowed to make a statement in allocution to help the court decide which choice to make. We disagree. To the extent that *Fisher* can be considered persuasive authority at all, it supports our conclusion that the trial court did not abuse its discretion when it did not permit respondent to make a statement in allocution.[3] That is, as we and the court in *Fisher* observed, the purposes of a criminal sentencing hearing and a dispositional hearing are different. Thus, any comparison between a defendant facing imposition of a criminal sentence and a respondent facing treatment after being found to be a sexually violent person is questionable. The fact that a trial court may impose one of two different types of treatment following a dispositional hearing does not somehow transform the dispositional hearing into something more akin to a criminal sentencing hearing where a defendant has the right to make a statement in allocution. Further, unlike what a defendant might say at the conclusion of a sentencing hearing, such as that he is remorseful for having committed the crime, perhaps justifying a reduced sentence, respondent has not established that any self-serving statement he would have made in allocution would have been relevant to the issue raised at his dispositional hearing. If respondent wished to present evidence to the trial court, he should have exercised his right to do so at the dispositional hearing. See *Fields*, 2012 IL App (1st) 112191, ¶ 73.

¶ 30 For these reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 31 Affirmed.

---

[3]*Fisher* is questionably persuasive given, among other things, the fact that it is unpublished.