DRAINAGE COMMISSIONERS OF DRAINAGE DISTRICT NO. 2
*v.*
DRAINAGE COMMISSIONERS OF UNION DRAIN. DIST. NO. 3.

*Opinion filed October 24, 1904.*

1. APPEALS AND ERRORS—*one cannot complain of action of court induced by him.* A party who insists upon a certain line of action by the trial court cannot insist, on appeal, that the court erred in adopting such line of action.

2. DRAINAGE—*what does not relieve land of liability under section 42 of Farm Drainage act.* Where drainage districts overlap each other, payment of an assessment against land lying in both districts for the construction of the main ditch does not relieve lands lying exclusively in one district from liability to the other district for contributing, under section 42 of the Farm Drainage act, toward the cost of constructing such ditch.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Douglas county; the Hon. W. G. COCHRAN, Judge, presiding.

This is an action of assumpsit brought by Union Drainage District No. 3 against Drainage District No. 2, in the circuit court of Douglas county, under the provisions of section 42 of the Farm Drainage act, which, in part, reads as follows: "The owners of land outside the drainage districts or another drainage district may connect with the ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district, or if such connection shall, by increase of water, require an enlargement of the district ditches, then the outside owners of land so connecting or other drainage district, as may be, shall pay the cost of such enlargement."

The declaration contained four counts, and the general issue was filed. The said drainage districts 2 and 3 include contiguous lands, and together contain 10,987 acres, 5783 acres being in district No. 2 and 5204 acres being in district No. 3, and the districts overlap each other so that 1832 acres

of said 10,987 acres are in both districts. The lands in district No. 3 are lower than in district No. 2, and the natural drainage is toward the south. The following sketch will show the lands contained in said districts, also the location of the several ditches in the territory sought to be drained, the lightly shaded portions of the sketch indicating the lands in district No. 3, those more heavily shaded in district No. 2, and those not shaded in both districts:

The districts were organized on the same day, September 3, 1900. Two of the commissioners in each district were the same, and the maps, profiles, estimates, etc., for each district were prepared by the same engineer, and the outlet for

both districts was to be a large open ditch commencing at the south-west corner of section 3 in district 3, and running north from that point. On October 26, 1900, it was determined by district No. 3 to change the upper portion of the main ditch or outlet from an open ditch to a thirty-inch tile drain, which necessitated deepening and widening the main ditch or outlet and its extension 7592 feet farther south. Upon district No. 3 making said change, district No. 2 deepened its ditches so that the bottom thereof was on the same grade as the bottom of the main ditch or outlet. District No. 3 expended $11,775 in constructing said main ditch or outlet as enlarged and extended, $2000 of which was paid by an assessment by district No. 3 upon the 1832 acres of land located in both districts. District No. 2 connected its drains with the main ditch or outlet, but refused to pay to district No. 3 any portion of the expense of constructing said enlarged main ditch or outlet, whereupon this suit was commenced to recover from district No. 2 the proportionate share of the cost of constructing said main ditch or outlet, which the lands in district No. 2, (other than lands located in that district which also formed a part of district No. 3,) under the statute, were liable to bear, and a trial resulted in a verdict and judgment in favor of Union District No. 3 for $3258.33⅓, which judgment has been affirmed by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

ECKHART & MOORE, for appellant.

EDWARD C. & JAMES W. CRAIG, Jr., and JOHN H. CHADWICK, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that district No. 2 connected its ditches with the main ditch or outlet as it was originally planned, and not with the main ditch or outlet as enlarged, and if it is liable to the appellee for any amount, it is liable only for its proportionate share of the cost of constructing

said main ditch or outlet as originally planned. Whether district No. 2 connected its ditches with the main ditch or outlet as enlarged was a question of fact, and the jury having found that it connected with the main ditch or outlet as enlarged, which finding was approved by the trial and Appellate Courts, that question is settled in favor of the appellee and cannot be reviewed in this court, as this court reviews questions of law, and not of fact.

It is next contended that the court erred in permitting the witnesses of appellee to state the amount of benefits, in gross, received by appellant from the enlargement and extension of said main ditch and outlet. The theory of appellee was, that appellant having connected its ditches with said enlarged ditch or outlet, it should pay such proportion of the cost of the construction thereof as the benefits to the lands lying exclusively in its district and outside of the lands lying in both districts bear to the entire cost of the construction of said enlarged ditch or outlet, and sought upon the trial to prove the benefits which would accrue to each tract of land lying exclusively in district No. 2. To this method of proof the appellant objected, and insisted the witnesses should be required to state the benefits in a gross sum which the appellant, as a district, would receive by the construction of said main ditch or outlet as enlarged if its ditches were connected therewith. The trial court agreed with appellant and adopted its view, and appellee thereupon interrogated its witnesses in accordance with the view insisted upon by appellant and adopted by the court. The appellant having insisted upon that view upon the trial and having procured a ruling from the court in accordance with its view, cannot now insist that the action of the court in that particular was wrong, but is bound by the action of the trial court in that regard.

It is next contended that the payment of $2000 to appellee by an assessment of that amount upon the 1832 acres of land located in both districts was a satisfaction of the claim of district No. 3 against all of the lands lying in district No. 2, and that by reason of the collection of said sum

by appellee by an assessment upon the lands lying in both districts, the lands lying exclusively in district No. 2 should be relieved from the payment of any part of the expense of the construction of said main ditch or outlet. It is apparent that district No. 3 has never received anything towards the payment of the expense of constructing said main ditch or outlet from the lands lying outside of that district located in district No. 2, and that the lands lying exclusively in district No. 2 have never paid any amount towards the construction of said enlarged ditch or outlet. This being so, we are unable to endorse the argument that the lands outside of district No. 3 located in district No. 2 should receive the benefit of said main ditch or outlet without contributing to the expense of the construction of the same. District No. 3 constructed the main ditch or outlet. It levied the cost thereof upon the lands of the district, which included 1832 acres which were also in district No. 2. If the lands in district No. 2, other than the 1832 acres which were also in district No. 3, are benefited by the use of said main ditch or outlet, it is apparent district No. 2 should contribute to the expense of the construction of said main ditch or outlet to the extent that the lands lying exclusively in district No. 2 are benefited from the use of said main ditch or outlet.

It is further contended that the court misdirected the jury as to the law of the case upon behalf of the appellee, refused to give to the jury proper instructions upon behalf of appellant and improperly modified certain instructions asked by appellant, and that the instructions given on behalf of appellee and those given on behalf of appellant are inconsistent and conflicting. Twenty-three instructions were given to the jury upon behalf of appellee and twenty-five upon behalf of appellant—forty-eight in all. It cannot be expected, as it would serve no useful purpose, that this court should take up and review and analyze all of said instructions, which, taken as a whole, cover about twenty-six pages of the printed abstract. The questions of law involved were not intricate, and a half dozen instructions upon either side would have

fully presented the law of the case to the jury. The prac-
tice of dumping upon the court a volume of instructions, like
the volume found in this record has often been condemned
by this court. Suffice it to say that we have examined the
instructions given, in the light of the evidence, and find no
errors therein which we deem of sufficient importance to re-
quire a reversal of the case.

Finding no reversible error in this record the judgment
of the Appellate Court will be affirmed.

*Judgment affirmed.*