No. 2--02--0328 

___________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

___________________________________________________________________________

In re
 DETENTION OF     ) Appeal from the Circuit Court     

WILLIAM G. SWOPE     ) of Ogle County.

     )

     ) No. 98--MR--25                                 

     )                                       

(William G. Swope, Petitioner-Appellant,     ) Honorable 

v. The People of the State of Illinois,     ) Timothy P. Nieman,

Respondent-Appellee).     ) Judge, Presiding. 

___________________________________________________________________________

JUSTICE McLAREN
 
delivered the opinion of the court:

Petitioner, William G. Swope, appeals from the order of the trial court denying his petition for conditional release pursuant to section 60 of the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/60 (West 2000)).  We affirm. 

On November 9, 1999, Swope was adjudicated a sexually violent person and committed to the custody of the Department of Human Services (DHS).  This court affirmed the adjudication and commitment in 
In re Detention of Swope
, No. 2--99--1272 (2001) (unpublished order under Supreme Court Rule 23).  On May 24, 2001, Swope filed a petition for conditional release.  After a hearing, the trial court denied Swope's petition.  This appeal followed.

Swope first contends that he did not receive a fair hearing on his petition because his expert witness was deprived of the opportunity to discuss his treatment progress with treatment providers at DHS while the State's expert was allowed to engage in such discussions.  

On July 24, 2000, Swope petitioned the court to appoint the Institute for Psychological Therapies (the Institute) to perform a reexamination of him, pursuant to section 55 of the Act (725 ILCS 207/55 (West 2000)).  The court granted the motion and ordered the Institute to examine Swope, prepare a report, and testify in court.  Hollida Wakefield and Ralph Underwager of the Institute performed the examination and prepared the report. On two status dates during the course of the examination, Swope's counsel told the court that two DHS employees refused to talk to Underwager.  On the second status date, Swope's counsel told the court that he would subpoena the workers and depose them. Eventually, Thomas Speaker of the DHS was deposed, and the deposition was used by Wakefield and Underwager "in lieu of an interview."  However, Wakefield and Underwager noted in their report:

"[T]his procedure is not adequate.  An attorney cannot be expected to know what questions to ask and what issues need to be explored more fully.  Therefore, it is our professional opinion that Mr. Swope has been seriously disadvantaged by the state's refusal to allow professional psychological contact with the treatment staff.  Once a person has been committed, it is crucial to be able to assess as fully and accurately as possible what changes have been brought about and observed in the course of treatment provided as the civil commitment law requires. *** Not having full access to comprehend the process and the outcomes limits Mr. Swope's ability to get a fair and complete assessment of his progress."

At the hearing on Swope's petition, Wakefield testified that her evaluation of Swope was made "more difficult" by the refusal of the DHS employees to answer her questions, especially as to whether his behaviors had improved, stayed the same, or deteriorated.  The State presented the testimony of clinical psychologist Barry Mark Leavitt, who had spoken with Swope's treatment team in preparing his evaluation, and Thomas Speaker, the member of Swope's treatment team who had been deposed by Swope's attorney. 

Swope argues that his right to due process was violated because his expert was denied the opportunity to interview the DHS treatment providers while the State's expert was allowed to speak to them.  Although proceedings under the Act are considered as civil in nature, a petitioner under the Act is entitled to all the constitutional rights afforded a criminal defendant, including the right to due process of law.  
In re Detention of Kortte
, 317 Ill. App. 3d 111, 115 (2000).  The right to due process is the right to a fundamentally fair trial in which the State has no strategic advantage and the respondent can defend himself on a level playing field.  
Kortte
, 317 Ill. App. 3d at 115-16.

We conclude that it was a violation of Swope's right to due process to allow the DHS employees to decline to talk to Swope's expert while they talked to the State's expert.  The core meaning of due process is fairness.  
People v. Collins
, 333 Ill. App. 3d 20, 26 (2002).  Procedural due process requires that a defendant have the right to relevant, competent evidence, and that the State take steps to insure that an indigent defendant has a fair opportunity to present his case.  
In re Detention of Allen
, 331 Ill. App. 3d 996, 1003 (2002).  We fail to see the fairness of a situation in which State witnesses may refuse to talk with the petitioner's experts yet may speak with the State's experts.  Both parties' experts rely to some extent on a petitioner's current treatment and behavioral changes in the course of the treatment to determine if that person should be released.  Wakefield clearly stated that Swope's ability to get a fair and complete assessment of his progress was limited by the incomplete access she had to Swope's treatment staff.  The State had access to this information but refused to give it to Swope.  This is not a "level playing field."

However, we cannot say that Swope attempted to enforce his right to a fair hearing.  While Swope's attorney twice informed the trial court that the DHS workers were not talking to his experts, counsel never sought a court order to remedy the situation.  On October 31, 2000, the following colloquy took place:

"MR. MILLER [Swope's attorney]: *** Judge Roe approved an order allowing me to engage some experts to examine Mr. Swope.  They're from the Minneapolis, Minnesota area.  I got a call from Doctor Underwager, who is one of the two, last week, stating that he hasn't quite finished the report.  He wanted to talk to or take a deposition of two of the people who are employed by the Department of Human Services, that's where Mr. Swope is in custody, a John [
sic
] Speaker and a Sean Jumper, J-u-m-p-e-r.  I said since we had a status hearing coming up, I would bring this up with the Assistant Attorney General, Mr. Curran, and with the court.  Mr. Curran has no objection to an order being entered.

MR. CURRAN [Assistant Attorney General]: Although, you know, Judge, just subsequent to our thinking about it, I don't think we can really order a witness to speak unless there is a deposition.

MR. MILLER: Yeah.

MR. CURRAN: But I, I don't know why they're not talking to this doctor, and they should, so maybe, maybe a phone call will be enough.

MR. MILLER:  We talked outside, Mr. Curran said, well, I will talk to the Department of Human Services' attorney, and I'm sure we can set something up, I'll get back to you, and that's fine with me, so I would suggest, Judge, we continue this for sixty days to see if we can get this wound up, I mean at least as to the report."

On the next status date, December 28, 2000, the following took place:

"MR. MILLER: *** So what our problem is here is that I was trying to set up an interview between one of my expert witnesses, and two of the workers at DHS, and was working with, through Mr. Curran.  He's not able to budge them, so what I'm going to have to do is subpoena them in for a deposition.  So if you would put this for a status about sixty days from now, I'll subpoena those people in and get that taken care of.  That should be pretty well finalized, I think.

THE COURT: Sounds like a fair approach.

MR. CURRAN: That's fine, Judge.  You know, like I said, I wish I could be of more help to Mr. Miller in expediting the process, but they don't want to talk without being deposed, so I guess it's, civil rules allow for it as much."

Swope brought the factual situation to the court's attention.  However, he never petitioned the court for any remedy, such as sanctions, or brought a motion 
in limine
 to bar the State's use of evidence obtained from the conversations with the DHS workers.  Instead, he went forward and took a deposition and never gave the trial court an opportunity to correct the situation.  This was a procedural default by Swope, wherein he volunteered to act and acquiesced in a procedure that ultimately may have
 
short-circuited his own right to due process.  See 
In re B.L.
, 315 Ill. App. 3d 602, 605 (2000).  Swope helped to create the issue of a violation of his right to due process by slumbering on that right; he cannot now appeal from an alleged defect that he, himself, helped to create.  For this reason, while we find that Swope's right to due process was violated, we will not reverse the trial court's judgment on this basis.

Swope next contends that the trial court applied the wrong standard in determining whether to grant his petition for conditional release.  Prior to August 17, 2001, section 60(d) of the Act provided that a court shall grant a petition for conditional release unless the State proved by clear and convincing evidence: 

"[T]hat the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not confined in a secure facility."  725 ILCS 207/60(d) (West 2000).

However, section 60(d) was amended to provide that a petition should be granted unless the State, again by clear and convincing evidence, proved "that the person has not made sufficient progress to be conditionally released."  725 ILCS 207/60(d) (West 2002).

The hearing on Swope's petition began on December 6, 2001, after the amendment to section 60(d) took effect.  In ruling on the petition on March 9, 2002, the trial court quoted the preamendment language of the Act as the standard for the case and, in relevant part, found:

"16. This Court must agree with the People that William's failure to sustain his participation in any aspect of his current treatment plan since October, 2000 indicates that William is not yet ready to move into a less secure environment.  The Court has no doubt that William is capable of successfully completing his treatment plan in a reasonably short period of time if he puts his heart and mind to the task.

17. For the foregoing reasons, the Court finds that the People have met the burden of proving, by clear and convincing evidence, that William is still a sexually violent person and that it is still substantially probable that he will engage in acts of sexual violence if he is not confined in a secure facility."

The court clearly relied on and ruled under the incorrect, preamendment standard.  However, we conclude that Swope was not prejudiced by this error.  The preamendment standard is a higher, more difficult standard for the State to meet; proving that a petitioner is still a sexually dangerous person and that "it is still substantially probable" that he will engage in acts of sexual violence if he is not confined is more difficult than proving a lack of "sufficient progress" toward conditional release.  In addition, a finding that it is "still substantially probable" that a person will engage in acts of sexual violence includes an implicit finding that the person has not made sufficient progress toward conditional release.  For these reasons, we determine that Swope was not prejudiced by the court's erroneous use of the incorrect standard.

Swope next contends that the trial court erred in relying on evidence and expert testimony based on inadmissible actuarial risk prediction instruments.  The State's expert, Barry Leavitt, testified that he relied, in part, on actuarial risk assessment instruments in forming his opinion on Swope's potential for future sexual violence.  Among these instruments were the Static-99 and the  MIN-SAT-R.  

In 
People v. Taylor
, 335 Ill. App. 3d 965 (2002), this court held that psychological and psychiatric testimony of an expert that is predicated on actuarial instruments was subject to the
 standard set forth in 
Frye v. United States
, 293 F. 1013 (D.C. Cir. 1923).  In 
Taylor
, we held that the State had failed to meet its burden to establish that such actuarial instruments had gained general acceptance in the psychological and psychiatric communities and that the trial court abused its discretion in permitting the State to present testimony regarding their use.  See 
Taylor
, 335 Ill. App. 3d at 978-80.  Swope now argues that 
Taylor
 requires this court to reverse the trial court and grant him a new hearing.  The State, on the other hand, asks us to reconsider our ruling in 
Taylor
.  

However, we need not reach either party's argument.  Swope failed to object to the introduction of evidence regarding these instruments or move 
in limine
 to prevent the introduction of such evidence.  Failure to specifically and timely object in the trial court waives the objection on review.  
In re Detention of Traynoff
, 338 Ill. App. 3d 949, 961 (2003).  In addition, Swope's own experts used these instruments in their analysis and included them in their report and testimony before the court.  At the hearing on the petition, Swope presented his evidence first, by agreement with the State.  Wakefield's testimony, including testimony about the actuarial instruments and the results of those tests, was given before the State had presented its evidence.  This distinguishes the case before us from 
Taylor
, where the defendant sought to bar the results from these instruments via a motion 
in limine
 and the court allowed the State to present the evidence after a 
Frye
 hearing.
 

 
This court has not held that such actuarial instruments are, as a matter of law, incompetent evidence.  In 
Taylor
, while we held that the State failed to meet its burden of proving that those instruments had gained general acceptance in the psychological and psychiatric communities, we did not foreclose future reconsideration of the use of the instruments.  See 
Taylor
, 335 Ill. App. 3d at 980.  Thus, the State's  introduction of evidence of these instruments, in the absence of an objection and in the face of Swope's initial use of the same type of evidence, is not plain error or 
per se
 reversible.  We conclude that Swope has procedurally defaulted on this issue, not only by failing to preserve the error for review, but by partaking of the same unsubstantiated evidence
 
in his own case.  Any error here is waived.

Swope next contends that the Act is unconstitutional under 
Kansas v. Crane
, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), in that the Act does not require a finding that he has serious difficulty in controlling his behavior, as is required by 
Crane
.  However, this court has rejected this same argument in many cases, most recently in 
People v. Swanson
, 335 Ill. App. 3d 117 (2002), and 
People v. Kastman
, 335 Ill. App. 3d 87 (2002).  See also  
Traynoff
, 338 Ill. App. 3d at 956-58.  We, therefore, decline to revisit this issue.                         

 
For these reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.