(No. 97204.—

*In re* DETENTION OF WILLIAM G. SWOPE (The People of the State of Illinois, Appellee, v. William G. Swope, Appellant).

*Opinion filed December 2, 2004.*

G. Joseph Weller, Deputy Defender, and Bruce Kirkham, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Linda D. Woloshin and Russell K. Benton, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Petitioner, William Swope, was adjudicated a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2000)). The circuit court of Ogle County committed Swope to the custody of the Department of Human

Services (DHS). Swope subsequently petitioned the circuit court for conditional release. The circuit court denied Swope's petition and the appellate court affirmed. 343 Ill. App. 3d 152. We allowed Swope's petition for leave to appeal (177 Ill. 2d R. 315(a)). We now affirm the judgment of the appellate court in part and vacate the judgment in part.

## BACKGROUND

On November 9, 1999, Swope was adjudicated a sexually violent person and committed to the custody of DHS. See 725 ILCS 207/35, 40 (West 2000). The appellate court upheld the adjudication and commitment. No. 2—99—1272 (unpublished order under Supreme Court Rule 23).

Following his commitment, Swope, in July 2000, requested the circuit court to appoint Ralph Underwager and Hollinda Wakefield of the Institute of Psychological Therapies (Institute) to perform a periodic reexamination of him. The request was made pursuant to section 55 of the Act, which provides that "[a]t the time of a reexamination under this Section, the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her." 725 ILCS 207/55 (West 2000). The circuit court granted the motion and authorized Swope to employ the Institute to examine him, prepare a report, and testify in court.

The circuit court held status hearings to monitor the progress of the examination. At two of these hearings, on October 31 and December 28, 2000, Swope's counsel informed the court that Swope's DHS treatment providers refused to discuss Swope's treatment progress with Underwager and Wakefield. At each hearing, both counsel discussed the possible use of depositions to obtain the sought-after DHS information. At the December 28 status hearing, Swope's counsel, the State, and the court agreed that Swope's counsel would depose the DHS treatment providers.

In February 2001, the circuit court authorized the issuance of a subpoena for the deposition of Thomas Speaker, a member of Swope's DHS treatment team. See 740 ILCS 110/10(d) (West 2000). In March 2001, Speaker was deposed. Underwager and Wakefield evaluated Swope using the information from the deposition "in lieu of an interview." However, in their April 12, 2001, report, they noted:

"This procedure is not adequate. An attorney cannot be expected to know what questions to ask and what issues need to be explored more fully. Therefore, it is our professional opinion that Mr. Swope has been seriously disadvantaged by the state's refusal to allow professional psychological contact with the treatment staff. Once a person has been committed, it is crucial to be able to assess as fully and accurately as possible what changes have been brought about and observed in the course of treatment provided as the civil commitment law requires. *** Not having full access to comprehend the process and the outcomes limits Mr. Swope's ability to get a fair and complete assessment of his progress."

Underwager and Wakefield opined that Swope had made sufficient progress to be conditionally released. See 725 ILCS 207/55(a) (West 2000).

In May 2001, Swope filed a petition for conditional release, pursuant to section 60 of the Act (see 725 ILCS 207/60 (West 2000)). Pursuant to the statute, the circuit court appointed Wakefield as an examiner, who would examine Swope and furnish a written report of the examination to the court. The court also appointed Barry Leavitt to evaluate Swope on behalf of the State. See 725 ILCS 207/60(c) (West 2000). Underwager and Wakefield reevaluated Swope and reported their opinion in a July 20 addendum to their April 12, 2001, report. Underwager and Wakefield reiterated their opinion that Swope should be conditionally released.

At the hearing held on Swope's petition for conditional release, Leavitt was the State's witness. In prepar-

ing his evaluation, Leavitt had discussed Swope's treatment progress with Swope's DHS treatment providers. Swope's witnesses included Speaker, Wakefield, and himself. Speaker was the member of Swope's DHS treatment team who had been deposed by Swope's counsel. Wakefield testified that the lack of cooperation on the part of Swope's DHS treatment providers made her evaluation of Swope more difficult because she was not able to obtain information on Swope's progress in specific treatment areas. At the close of the hearing, the trial court denied Swope's petition for conditional release.

Swope appealed. The appellate court affirmed the order of the circuit court. 343 Ill. App. 3d 152. The appellate court concluded that it was a violation of Swope's right to procedural due process to allow Swope's DHS treatment providers to refuse to discuss his treatment progress with Wakefield while they engaged in such discussions with Leavitt. 343 Ill. App. 3d at 155. However, the appellate court further observed that Swope's counsel "took a deposition and never gave the trial court an opportunity to correct the situation. This was a procedural default by Swope, wherein he volunteered to act and acquiesced in a procedure that ultimately may have short-circuited his own right to due process. See *In re B.L.*, 315 Ill. App. 3d 602, 605 (2000)." 343 Ill. App. 3d at 156. Thus, according to the appellate court, Swope "cannot now appeal from an alleged defect that he, himself, helped to create. For this reason, while we find that Swope's right to due process was violated, we will not reverse the trial court's judgment on this basis." 343 Ill. App. 3d at 156.

This court allowed Swope's petition for leave to appeal. 177 Ill. 2d R. 315(a). Additional pertinent background will be discussed in the context of our analysis of the issues.

## ANALYSIS

Swope's sole claim before this court is that the

proceedings held on his petition for conditional release violated his right to due process of law. He contends that he was denied procedural due process when his DHS treatment providers refused to discuss his treatment progress with his court-appointed expert while they engaged in such discussions with the State's expert witness. In response, the State first points out that Swope acquiesced in the procedure employed in the circuit court and cannot be heard to complain about it now on appeal. The State further argues that Swope was provided with procedural due process in that he was allowed every opportunity to put forward relevant and competent evidence before the circuit court.

The appellate court concluded that the proceeding held on Swope's petition for conditional release violated his right to procedural due process. 343 Ill. App. 3d at 155. However, the appellate court did not reverse the trial court's order on this basis because of Swope's acquiescence in the procedure. 343 Ill. App. 3d at 155-56. In his brief filed in this court, Swope contends: "The State's disregard of Swope's right to a fair hearing and its refusal to cooperate with Swope's expert witness is so egregious that its actions should not be excused under any circumstances." Swope argues that the appellate court based its finding of acquiescence on a single case (343 Ill. App. 3d at 156, citing *In re B.L.*, 315 Ill. App. 3d at 605) that is distinguishable from the facts of this case.

We earlier noted that at the October 31 and December 28, 2000, status hearings, both counsel discussed the possible use of depositions to obtain the sought-after DHS information. At the October 31 hearing, the following colloquy occurred:

> "MR. MILLER [Swope's attorney]: Yes, sir. Judge, this was set by, this used to be Judge Roe's case, it's now set today for a status hearing. Judge Roe approved an order allowing me to engage some experts to examine Mr. Swope. *** I got a call from Doctor Underwager, who is one of the

two, last week, stating that he hasn't quite finished the report. He wanted to talk to or take a deposition of two of the people who are employed by the Department of Human Services, that's where Mr. Swope is in custody, a [Thomas] Speaker and a Sean Jumper, J-u-m-p-e-r. I said since we had a status hearing coming up, I would bring this up with the Assistant Attorney General, Mr. Curran, and with the court. Mr. Curran has no objection to an order being entered.

MR. CURRAN [assistant Attorney General]: Although, you know, Judge, just subsequent to our thinking about it, I don't think we can really order a witness to speak unless there is a deposition.

MR. MILLER: Yeah.

MR. CURRAN: But I, I don't know why they're not talking to this doctor, and they should, so maybe, maybe a phone call will be enough.

MR. MILLER: We talked outside, Mr. Curran said, well, I will talk to the [DHS] attorney, and I'm sure we can set something up, I'll get back to you, and that's fine with me, so I would suggest, Judge, we continue this for sixty days to see if we can get this wound up, I mean at least as to the report.

MR. CURRAN: That's fine, your Honor."

At the December 28 status hearing, the following colloquy occurred:

MR. MILLER: *** So what our problem is here is that I was trying to set up an interview between one of my expert witnesses, and two of the workers at DHS, and was working with, through Mr. Curran. He's not able to budge them, so what I'm going to have to do is subpoena them in for a deposition. So if you would put this for a status about sixty days from now, I'll subpoena those people in and get that taken care of. That should be pretty well finalized, I think.

THE COURT: Sounds like a fair approach.

MR. CURRAN: That's fine, Judge. You know, like I said, I wish I could be of more help to Mr. Miller in expediting the process, but they don't want to talk without being deposed, so I guess it's, civil rules allow for it as much."

The circuit court subsequently authorized the issuance of a subpoena for the deposition of Speaker.

The rule of invited error or acquiescence is a procedural default sometimes described as estoppel. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented. The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings. *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (and cases cited therein); accord *People v. Segoviano*, 189 Ill. 2d 228, 240-41 (2000).

In this case, the above-quoted colloquies show that Swope's counsel and the State agreed on the possible use of depositions to obtain the sought-after DHS information. Swope's counsel subsequently asked to depose the DHS treatment providers, and the State and the circuit court agreed. Swope, "having insisted upon that view upon the trial and having procured a ruling from the court in accordance with [his] view, cannot now insist that the action of the court in that particular was wrong, but is bound by the action of the trial court in that regard." *Drainage Commissioners of Drainage District No. 2 v. Drainage Commissioners of Union Drain No. 3*, 211 Ill. 328, 331 (1904). Swope may not now attack a procedure to which he agreed, even though that acceptance may have been grudging. See *Casey v. Baseden*, 111 Ill. 2d 341, 349 (1986). We uphold the appellate court's finding of acquiescence.

Our affirmance of the appellate court's finding of acquiescence does not mean, however, that we approve of the approach taken by that court in resolving Swope's appeal. As noted previously, the appellate court began its analysis in this case by holding, in the first instance, that "it was a violation of Swope's right to due process to allow the DHS employees to decline to talk to Swope's expert while they talked to the State's expert." 343 Ill.

App. 3d at 155. In our view, this case presents us with the opportunity to remind bench and bar that "[a] court should avoid constitutional questions where the case may be decided on other grounds." *In re S.G.*, 175 Ill. 2d 471, 479 (1997); *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994). This court has viewed cases of acquiescence strictly, finding that a party's "active participation in the direction of proceedings *** goes beyond mere waiver" such that the traditional exceptions to the waiver rule do not apply. *People v. Villareal*, 198 Ill. 2d 209, 227 (2001). In light of this precedent, we believe the appellate court ought not to have concluded that due process was violated in this case without first resolving the threshold acquiescence issue. We therefore vacate that part of the judgment of the appellate court which discusses and holds that the procedure utilized in the trial court violated Swope's right to due process.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed in part and vacated in part.

*Appellate court affirmed in part and vacated in part.*