2020 IL App (1st) 172021-U

No. 1-17-2021

Order filed July 31, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 60123 |
| | ) | |
| ROBERT WEAVER, | ) | Honorable |
| | ) | James Michael Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for four counts of armed robbery while armed with a firearm, concluding that he affirmatively acquiesced to the purported error in the trial court's answer to a jury question.

¶ 2    Following a jury trial, defendant Robert Weaver was found guilty of four counts of armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2014)) and one count of aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2014)). After the trial court merged the counts, defendant was sentenced to four concurrent terms of 45 years' imprisonment. On appeal,

defendant contends he is entitled to a new trial because the court erred in responding to a question from the jury. We affirm.

¶ 3    The State charged defendant with, *inter alia*, four counts of armed robbery and one count of aggravated battery. The State alleged that, on July 16, 2014, defendant, by use of force or threat of imminent use of force, took personal property from Romelia Garcia, Andrew Arredondo, Valentina Duran, and Terrell Washington, while armed with a firearm. In addition, the State alleged defendant struck Garcia about the body with a firearm.

¶ 4    At his arraignment, defendant informed the trial court he wished to proceed *pro se*. The court admonished defendant in accordance with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) and also advised him, *inter alia*, that he would not be entitled to special treatment and he would not be able to complain about the competency of his self-representation on appeal. Defendant stated he understood the court's admonishments, and the court accepted his waiver of counsel. At a later status hearing, defendant invoked his right to counsel, and the court appointed him counsel. At a subsequent status hearing, however, counsel was permitted leave to withdraw at defendant's behest and, after stating he still understood the court's Rule 401 admonishments, defendant resumed his *pro se* status. Before jury selection began, the trial court admonished defendant that, because it wanted to prevent the jury from learning he was in custody, he would be required to remain at his table so that the courtroom deputies did not have to walk around with him.

¶ 5    Because defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount the evidence here to the extent necessary to resolve the issue raised on appeal.

¶ 6    The evidence at trial showed that, around 4 p.m. on July 16, 2014, two men carried out an armed robbery aboard a Chicago Transit Authority (CTA) orange line train as it approached the station at Roosevelt Road. One of the men carried a gun and wore a checker- or square-patterned sweater, and the other carried a backpack to collect the proceeds from the robbery and wore a striped sweater, jeans, and a baseball cap. The man who carried the backpack was later identified using CTA surveillance footage and facial recognition software as Michael Taylor. As the train neared the Roosevelt station, the gunman and Taylor began demanding passengers' belongings. The gunman and Taylor took (1) Duran's wallet, which contained $80, her employer card, her state identification card, and a gift card; (2) Garcia's cell phone and purse, which contained various papers and approximately $200; (3) Washington's phone and a "couple dollars"; and (4) Arredondo's iPod and $15. During the robbery, the gunman struck Garcia in the face with the firearm when she refused to give up her purse, leaving her bruised and bloodied. When the train arrived at Roosevelt station, the gunman told the passengers that, if they disembarked the train, he would shoot them. CTA surveillance footage, which was admitted into evidence and published to the jury, depicted two men wearing the clothing described at trial by Duran, Garcia, Washington, and Arredondo riding on the train and, once it arrived at the Roosevelt station, fleeing from the platform, down the stairs, and through a turnstile onto Roosevelt.

¶ 7    The State presented testimony of an individual who saw two men dividing up money in the alley behind the patio area of a restaurant near the Roosevelt station. Another witness saw one man enter the patio area through a back gate, which is typically used only by employees, walk through, and exit onto Wabash Street. The second man entered the patio approximately one minute later, asked for a menu, and then exited onto Wabash without ordering. The state

introduced into evidence the jeans, sweater, and hat worn by Taylor at the time of the robbery, found near the resturant. Surveillance footage from the patio area was admitted into evidence and published to the jury, showing the two men in the patio area.

¶ 8     The identity of the gunman was the main issue at trial. Duran, Washington, and Arredondo identified defendant in open court as the gunman. Garcia testified she did not see the gunman in court but she identified the individual wearing the checker- or square-patterned sweater as the gunman in the CTA surveillance footage. Before trial, Duran identified defendant as the gunman in a physical lineup, and Arredondo identified him as the gunman in both a photographic array and physical lineup. Garcia and Washington, however, did not identify the defendant as the gunman prior to trial.

¶ 9     During its deliberations, the jury sent a note to the court, which stated, "Robert Weaver Was he allowed to approach the jury? Are we allowed to see him up close and without glasses?"[1] The trial court asked defendant whether he had any suggestion as to how the question should be answered, and defendant responded, "[n]ot really, to be honest, I mean, it was a reason why it was done, you know, but – you told me not to move around." The court proposed the following answer: "Ladies and gentlemen of the jury, you have received all of the evidence in this case. Please continue to deliberate." The court asked defendant whether the proposed answer was "agreeable," and both defendant and the State answered affirmatively.

¶ 10    The jury found defendant guilty four counts of armed robbery and one count of aggravated battery. Defendant filed a *pro se* motion in arrest of judgment and a motion for new trial, neither of which took issue with the trial court's response to the jury's question. The court

_____

[1] The jury's note is not included in the record on appeal. Our recitation of what it said is based on the trial court's description of the note.

denied both motions and, pursuant to defendant's request, appointed counsel to assist him at sentencing.

¶ 11   The trial court merged the aggravated battery conviction into the armed robbery conviction concerning Garcia, and sentenced defendant to four concurrent terms of 45 years' imprisonment. Defendant filed a motion to reconsider his sentence, which the court denied. This appeal followed.

¶ 12   On appeal, defendant contends the trial court erred in responding to the jury's question regarding whether he was allowed to approach the jury and whether the jury could view him up close and without glasses. According to defendant, the court should have instructed the jury not to draw a negative inference from the fact defendant remained at counsel table throughout trial instead of responding that it had received all the evidence in the case and should continue to deliberate.

¶ 13   When a defendant acquiesces in the trial court's answer to a jury question, the defendant cannot later complain that the trial court's answer was error. *People v. Averett*, 237 Ill. 2d 1, 23-24 (2010) (citing *People v. Emerson*, 189 Ill. 2d 436, 491-92 (2000)). The rule of affirmative acquiescence is grounded in considerations of fairness and its purpose is to prevent a defendant from securing reversal based on a purported error to which he consented. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 14   Here, the record clearly shows defendant acquiesced to the purported error of which he now complains. When the jury sent its question to the trial court asking whether defendant was allowed to approach the jury and whether the jury could view him up close and without glasses, the court suggested its answer in front of both parties, and defendant agreed to the answer.

Accordingly, under the doctrine of acquiescence, defendant is unable to claim the court's answer was in error.

¶ 15    Defendant, relying on *People v. Johnson*, 2013 IL App (2d) 110535, acknowledges he acquiesced to the purported error but asks us to overlook his acquiescence because his claim on appeal "cannot be construed as a duplicitous tactic to take advantage of his unsuccessful trial level acquiescence." We decline to do so and find that *Johnson* is inapposite. In that case, the defendant's attorney acquiesced to an erroneous jury instruction regarding the extent to which it could consider other-crimes evidence and the defendant's prior felony conviction, which compounded and amplified the defendant's attorney's ineffectiveness in acquiescing to the joinder of two criminal cases. *Id.* ¶ 75. Moreover, the court's excusal of the defendant's acquiescence was limited to the unique facts of that case. *Id.* ¶ 79. In this case, the jury instructions did not contain a misstatement of the law, and the unique facts present in *Johnson* are not present here. Accordingly, we decline to excuse defendant's acquiescence to the purported error.

¶ 16    For the reasons stated, we affirm the circuit court's judgment.

¶ 17    Affirmed.