**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190735-U

Order filed September 7, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0735 Circuit No. 18-CF-63 |
| AARON E. FARLEY, | ) ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Daugherity and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Evidence at trial was sufficient to allow a reasonable trier of fact to find defendant guilty beyond a reasonable doubt; (2) the State did not commit reversible plain error in its opening statement or closing arguments; and (3) defendant is precluded from raising an argument relating to the amendment of the indictment.

¶ 2    Defendant, Aaron E. Farley, appeals following his conviction for unlawful delivery of a controlled substance. He argues that the evidence introduced by the State at his trial was insufficient to demonstrate beyond a reasonable doubt his commission of that offense on an accountability theory. Defendant also argues that the State committed reversible plain error in its

opening and closing comments. Finally, defendant asserts that the State made a material amendment to the indictment, such that its failure to return the indictment to the grand jury constitutes reversible plain error. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         The State charged defendant with a single count of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2016)). The indictment alleged that defendant delivered "less than 50 grams of a substance containing Psilocybin, commonly known as mushrooms, a controlled substance, other than as authorized in the Controlled Substances Act." The matter proceeded to a jury trial.

¶ 5         Prior to jury selection, the State requested an amendment to the face of the indictment, changing "psilocybin" to "psilocyn." Defense counsel explicitly declined to object, and the court allowed the amendment.

¶ 6         In its opening statement at trial, the prosecutor explained the function of the Kankakee Area Metropolitan Enforcement Group (KAMEG). He asserted: "It is their responsibility to get gangs, guns and drugs off the street and they do it very well."

¶ 7         Clayt Wolfe of KAMEG testified he frequently worked with confidential sources. In May 2017, the drug task force in Livingston County contacted KAMEG, advising that one of its sources, Zack, could provide information and an introduction to purchase narcotics in Kankakee County. Zack was working for consideration, relaying information in exchange for either sentencing leniency or dropped charges.

¶ 8         Wolfe met with Zack. The target of the investigation would be defendant. As Wolfe looked on, Zack arranged a meeting with defendant via text message. In the text messages, introduced into evidence, Zack requests that the other person meet him in Herscher. The other person agrees,

and the parties decide to meet at a gas station. In the final text message, the other person invites Zack to "jump in the back" of the orange car. The messages contain no reference to narcotics.

¶ 9        Wolfe and Zack drove together to Herscher. Upon arriving at the gas station, Wolfe identified the orange car and approached it on foot with Zack alongside. Wolfe observed that defendant was sitting in the front passenger seat, Daniel Hines was sitting in the driver's seat, and Samantha Schmelor was sitting in the back middle seat. Wolfe entered the car, sitting in the backseat directly behind defendant.

¶ 10        Wolfe noticed a bag in Schmelor's lap, which he suspected contained the mushrooms that he was attempting to purchase. Wolfe grabbed the bag from Schmelor's lap, then handed her $70. Wolfe testified that Schmelor "directly said here, Aaron and handed—she handed the money to him in the front passenger's seat."

¶ 11        The prosecutor then asked Wolfe what happened after the transaction was completed. Wolfe responded: "We just had a general conversation. I asked—I inquired about their sales of the Psilocybin mushrooms. If this was the usual amount they sold, if they could get more, if they sold any other type of narcotics, which they said they could get basically whatever I wanted ***." When asked who, specifically, said they could get Wolfe whatever narcotics he wanted, Wolfe responded that it was "[defendant] in the front passenger seat and also [Hines] in the front driver's seat."

¶ 12        Wolfe then exited the car. He testified: "I approached the front passenger seat and spoke to [defendant] *** and I said, hey, are you the one that I was talking to basically—who we were talking to through the text messages. I shook his hand and we said our goodbyes."

¶ 13        Wolfe was equipped with recording equipment throughout the transaction. The resulting video was played in open court. The video corroborated Wolfe's account of the events in question. The video shows defendant talking to Wolfe regarding the amounts of mushrooms sold. Defendant

tells Wolfe that they can get him "just about anything you need." After Wolfe exits the car, he approaches defendant at the passenger's window and asks, "You're Aaron, the one I was talking to?" Defendant repeatedly responds in the affirmative.

¶ 14 On cross-examination, Wolfe agreed that the text messages did not contain defendant's name. He further agreed that no one involved in the investigation "had any way of knowing" whether it was defendant who sent the messages, as opposed to Hines or Schmelor.

¶ 15 Allen Greep of the Illinois State Police Division of Forensic Sciences testified that his testing determined that the 10.1 grams of mushroom material procured by Wolfe contained psilocyn.

¶ 16 In closing argument, the prosecutor emphasized that defendant was "in charge" of the transaction, rather than Schmelor. He urged that Schmelor gave the money to defendant immediately because the money belonged to defendant. The prosecutor further pointed out that defendant and Hines told defendant they could obtain more narcotics. He argued that defendant was "pulling the strings" and that Schmelor was acting at his behest. He added that the mushrooms "came from the defendant." Finally, the prosecutor noted that "[Wolfe] testified credibly. He was not impeached in any way."

¶ 17 The jury found defendant guilty, and the court sentenced him to a term of eight years' imprisonment. This appeal follows.

¶ 18                                                    II. ANALYSIS

¶ 19 Defendant raises three arguments on appeal. First, he contends that the evidence introduced by the State was insufficient to sustain a conviction for unlawful delivery of a controlled substance. Second, he argues that the State committed prosecutorial misconduct in improperly vouching for the credibility of a witness and misstating the evidence. Finally, defendant contends that the State's

amendment to the indictment materially altered the charge, such that a return of that instrument to the grand jury was required. We address each argument in turn.

¶ 20                              A. Sufficiency of the Evidence

¶ 21       When a challenge is made to the sufficiency of the evidence at trial, we review to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In making this determination, we review the evidence in the light most favorable to the prosecution. *People v. Baskerville*, 2012 IL 111056, ¶ 31. It is not the purpose of a reviewing court to retry a defendant. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). Instead, great deference is given to the trier of fact. See, *e.g.*, *People v. Saxon*, 374 Ill. App. 3d 409, 416-17 (2007). All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005).

¶ 22       As charged in this case, a person commits unlawful delivery of a controlled substance where he knowingly delivers a schedule I or II controlled substance. 720 ILCS 570/401(d) (West 2016). Defendant tacitly concedes that the State proved beyond a reasonable doubt that unlawful delivery of a controlled substance was committed. He argues that the State's evidence merely demonstrated that Schmelor committed that offense, and that the evidence was insufficient to prove that defendant was legally accountable for Schmelor's act.

¶ 23       A person is legally accountable for the criminal acts of another when, "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2016). The accountability statute also provides that "[m]ere presence at the scene of a crime does not render a person accountable for an

offense; a person's presence at the scene of a crime, however, may be considered with other circumstances by the trier of fact when determining accountability." *Id.*

¶ 24    In the present case, a rational trier of fact could have reasonably concluded beyond a reasonable doubt that defendant aided and abetted Schmelor's delivery of the mushrooms with the intent of facilitating that offense. Contrary to his argument on appeal, defendant was not "merely an innocent bystander" at the drug transaction. Defendant confirmed to Wolfe that he had been the person sending the text messages to Zack to arrange the transaction. To be sure, the text messages between Zack and defendant did not make explicit reference to drugs or a drug transaction. Nevertheless, the evidence showed that defendant arranged a meeting at which a drug transaction commenced. As Wolfe did not overtly request drugs when he was in the car, the inescapable inference is that the drug transaction was implicit in the text message conversation. Additionally, defendant's comment that Wolfe could be provided with "just about anything [he] need[s]" tends to undermine defendant's "innocent bystander" theory.

¶ 25    Defendant argues that the text messages are "immaterial in the accountability analysis" because Wolfe testified that no one involved in the investigation "had any way of knowing" whether it was defendant who sent the messages, as opposed to Hines or Schmelor. However, the record makes clear that this line of testimony from Wolfe was referring to investigators' knowledge at the time the text messages were being sent. Wolfe testified that he explicitly asked defendant if he had been the person sending the text messages. Wolfe testified, and the video evidence confirmed, that defendant said "Yes." It was thus irrefutably established that defendant sent the text messages.

¶ 26    Furthermore, a rational trier of fact could infer defendant's role in the transaction from the fact that Schmelor immediately gave him Wolfe's money. As the acquisition of money is, at least

6

from the seller's perspective, the very purpose of a drug transaction, it may be reasonably be inferred that the person who ultimately receives the money is a participant in the transaction. To this point, defendant argues that it was equally possible that Schmelor simply gave defendant the money because she owed him money for reasons unrelated to the drug transaction. The trier of fact is not obligated to seek out and accept any possible explanation of the evidence compatible with a defendant's innocence; nor are they required to disregard reasonable inferences that do flow from the evidence. *Saxon*, 374 Ill. App. 3d at 416-17. Especially in light of the evidence that defendant arranged the drug transaction, it is reasonable to infer that Schmelor delivered the money to defendant as a part of that transaction.

¶ 27        In short, a rational trier of fact could conclude beyond a reasonable doubt that defendant aided Schmelor's delivery of the narcotics with the intent to facilitate the commission of the offense. Accordingly, we find that the evidence presented by the State was sufficient to sustain a conviction for unlawful delivery of a controlled substance.

¶ 28                          B. Prosecutorial Misconduct

¶ 29        Defendant argues that the State committed prosecutorial misconduct in both its opening statement and its closing argument. First, he contends that the prosecutor improperly vouched for the credibility of witnesses when he commented in his opening statement that "[i]t is [KAMEG's] responsibility to get gangs, guns and drugs off the street and they do it very well." Defendant contends that the prosecutor engaged in improper vouching again in closing when he asserted that Wolfe "testified credibly." Finally, defendant argues that the prosecutor's summation of the evidence, which presented a theory that defendant was in charge or in control of the transaction (see *supra* ¶ 16) amounted to a misrepresentation of the evidence.

7

¶ 30 Defendant concedes that he has failed to preserve each of the above claims for review. Accordingly, he requests that this court review those matters under the plain-error doctrine. A defendant seeking relief under the plain-error doctrine has the burden of demonstrating that a clear, obvious, or plain error occurred at trial, as well as the burden of showing that the error was prejudicial, such that he is entitled to relief. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). We begin by determining which, if any, of defendant's claims rise to the level of clear or obvious error.

¶ 31                                                 1. Vouching

¶ 32 It is well-settled that "prosecutors are not permitted to vouch for the credibility of a government witness." *People v. Williams*, 2015 IL App (1st) 122745, ¶ 12. The United States Supreme Court has explained the rationale for the prohibition on vouching as follows:

> "The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

¶ 33 Initially, the prosecutor's comment that "[i]t is [KAMEG's] responsibility to get gangs, guns and drugs off the street and they do it very well," was not a vouch for the credibility of any testifying KAMEG agent. KAMEG's effectiveness at getting gangs, guns, and drugs off the street

8

has no bearing, either explicitly or implicitly, on the agents' credibility as witnesses or their tendency to testify truthfully. Thus, the prosecutor's comment was not error.

¶ 34    Further, we cannot conclude that the prosecutor's assertion that Wolfe was credible was clear or obvious error. "[C]losing arguments must be viewed in their entirety, and the challenged remarks must be viewed in context." *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007). The full statement from the prosecutor was: "[Wolfe] testified credibly. He was not impeached in any way."

¶ 35    As the *Young* decision makes clear, vouching raises concerns that the prosecutor, as an agent of the government, is urging the jury to believe a witness not based on the evidence, but based on the prosecutor's authoritative assertion that it should do so. *Young*, 470 U.S. at 18-19. Here, however, the prosecutor did not baldly assert that Wolfe should be believed. Rather, he argued that the lack of impeachment necessitated a finding of credibility. That is, there was no reason, at all, to doubt the veracity of Wolfe's testimony. "The credibility of a witness is a proper subject for closing argument if it is based on the evidence or inferences drawn from it." *People v. Hudson*, 157 Ill. 2d 401, 445 (1993). The prosecutor in this case did not personally vouch for Wolfe's credibility, but simply argued, based on the evidence adduced at trial, that Wolfe's account should be believed. This was not error.

¶ 36                              2. Misrepresentation of Evidence

¶ 37    In his closing, the prosecutor argued a theory of the case that presented defendant as the ringleader of the drug operation. He urged that defendant provided the mushrooms and that Schmelor was merely working on his behalf. Defendant, having argued that the evidence was insufficient to prove guilt on an accountability theory, similarly argues that this argument was unsupported by the evidence.

9

¶ 38    "A prosecutor has wide latitude in making a closing argument and is permitted to comment on the evidence and any fair, reasonable inferences it yields." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). In the present case, the evidence gave rise to a fair and reasonable inference that defendant was the primary operator of the drug transaction. Defendant admitted to Wolfe that it was him who had planned the transaction with Zack. Defendant, not Schmelor, engaged in conversation with Wolfe about potential future drug transactions and it was defendant who discussed an ability to get Wolfe "just about anything you need." Finally, defendant immediately received the money from Schmelor at the conclusion of the transaction. See *supra* ¶ 26. Where defendant received the money that Wolfe delivered in exchange for the mushrooms, it can be reasonably inferred that it was defendant who ultimately provided those mushrooms. In sum, the prosecutor's theory of the case presented fair and reasonable inferences from the evidence at trial and was therefore not error.

¶ 39    Defendant has failed to demonstrate any clear or obvious error. We therefore need not proceed to further steps in the plain-error analysis. Instead, we honor the forfeiture of these issues.

¶ 40                                    C. Indictment

¶ 41    Finally, defendant contends that the State's amendment to the indictment—changing "psilocybin" to "psilocyn"—materially altered the charge, such that a return of that instrument to the grand jury was required. Again, defendant concedes that he failed to preserve this claim, but requests plain-error review. The State argues that defendant invited the error when counsel expressly stated that she had no objection to the amendment.

¶ 42    "The rule of invited error or acquiescence is a procedural default sometimes described as estoppel. [Citation.] Simply stated, a party cannot complain of error which that party induced the

10

court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

> "To allow a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend notions of fair play and encourage defendants to become duplicitous. [Citation.] It would also deprive the State of the opportunity to cure the alleged defect." *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17.

¶ 43　　Here, counsel stated explicitly that she had no objection to the State's amendment of the indictment. Because defendant, via counsel, expressly agreed to proceed in this manner in the circuit court, he is now estopped from taking exception to that procedure on appeal. See *Swope*, 213 Ill. 2d at 217.

¶ 44　　Even if we were to not apply the doctrine of invited error, it is well-settled that when a defect in a charging instrument is challenged for the first time on appeal, reversible error will be found only where the defendant demonstrates prejudice in the preparation of his defense. *E.g.*, *People v. Cuadrado*, 214 Ill. 2d 79, 88 (2005). Defendant asserts, in his reply brief, that the last-minute amendment prevented him from preparing "a defense based on the substance change in the indictment." Defendant declines to offer any actual explanation as to how his defense might have differed depending on whether he was charged with delivering psilocyn rather than psilocybin. In short, defendant failed to demonstrate any prejudice in the preparation of his defense.

¶ 45　　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 46　　For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 47　　Affirmed.

11